UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELLIOTT L. JOHNSON, | ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) )  No. 1:15-cv-00757-JMS-TAB |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) ) |
| *Defendant*. | ) ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Elliot L. Johnson applied for disability and disability insurance benefits from the Social Security Administration ("SSA") on March 12, 2012, alleging an onset date of January 24, 2011. [Filing No. 11-2 at 19.] His applications were denied initially on May 2, 2012, [Filing No. 11-2 at 19], and upon reconsideration on June 14, 2012, [Filing No. 11-2 at 19]. Administrative Law Judge Mark C. Ziercher ("ALJ") held a hearing on October 16, 2013, [Filing No. 11-2 at 69], whereupon he issued a decision on December 19, 2013, concluding that Mr. Johnson was not entitled to receive benefits, [Filing No. 11-2 at 19-34]. The Appeals Council denied review on March 17, 2015. [Filing No. 11-2 at 6.] Mr. Johnson then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. Johnson was born on January 15, 1961, [Filing No. 11-5 at 2], and has a high school education, [Filing No. 11-2 at 32], with previous work experience as a recycler, [Filing No. 11-2

1

at 32].[1]  Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on December 19, 2013, determining that Mr. Johnson was not entitled to receive disability benefits. [Filing No. 11-2 at 33-34.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Johnson had not engaged in substantial gainful activity[2] since the alleged onset date. [Filing No. 11-2 at 21.]

- At Step Two of the analysis, the ALJ found that Mr. Johnson suffered from the following severe impairments: "lumbar degenerative disc disease; schizoaffective disorder; depression, not otherwise specified (NOS); alcohol dependence; and marijuana dependence." [Filing No. 11-2 at 22.]

- At Step Three of the analysis, the ALJ found that Mr. Johnson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 22.]

- After Step Three but before Step Four, the ALJ found that Mr. Johnson has the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 404.967(b), with the following limitations: "[The claimant] can have frequent exposure to

---

[1] Mr. Johnson detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts.  Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Johnson, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

    moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations).  He can occasionally climb ramps and stairs; can never climb ladders, ropes and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl.  He can have frequent exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations).  He can understand, remember, and perform work tasks at GED Reasoning Level 03 (as defined in the Dictionary of Titles) and perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks.  He can have frequent contact with the general public." [Filing No. 11-2 at 25.]

- At Step Four of the analysis, the ALJ found that Mr. Johnson is unable to perform any past relevant work.  [Filing No. 11-2 at 32.]
- At Step Five of the analysis, the ALJ found that considering Mr. Johnson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Johnson can perform.  [Filing No. 11-2 at 32.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.

3

The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are

not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

On appeal, Mr. Johnson challenges the ALJ's decision on the following four grounds: (1) the ALJ's hypothetical questions to the vocational expert ("VE") did not include Mr. Johnson's moderate limitations in concentration, persistence, or pace, [Filing No. 15 at 12]; (2) the ALJ failed to provide an explanation to support his finding that Mr. Johnson does not meet Listing 1.04, [Filing No. 15 at 15]; (3) the ALJ did not properly consider the evidence regarding Mr. Johnson's need for a cane, [Filing No. 15 at 21]; and (4) the ALJ failed to give special deference to the treating physician's opinion, [Filing No. 15 at 24]. The Court will address the issues in turn.

### A. Concentration, Persistence, or Pace

Mr. Johnson argues that the ALJ failed to incorporate his moderate limitations in concentration, persistence, or pace in the hypothetical questions to the VE during the hearing.

5

[Filing No. 15 at 12.] Mr. Johnson claims that although the ALJ asked different variations of the hypothetical to take into account his limitations, the ALJ did not include his moderate limitations in concentration, persistence, or pace as opined by the state agency consultants. [Filing No. 15 at 13 (citing Filing No. 11-7 at 45-46; Filing No. 11-7 at 59).] Mr. Johnson further claims that although the ALJ's decision acknowledges that Mr. Johnson has moderate difficulties in concentration, persistence, or pace, the ALJ failed to incorporate those limitations into his RFC. [Filing No. 15 at 12.]

In response, the Commissioner argues that the ALJ expressly relied on the state agency consultants' findings and incorporated them into the hypotheticals for the VE. [Filing No. 20 at 15-16 (citing Filing No. 11-2 at 31; Filing No. 11-7 at 45-48; Filing No. 11-7 at 77).] Thus, the Commissioner claims that Mr. Johnson "has not shown that the ALJ failed to include any specific, medically supported mental restrictions on concentration, persistence, or pace that went beyond the restrictions that the ALJ found," and that he has not cited to any other "accepted medical sources" that "assessed a greater capacity than the ALJ." [Filing No. 20 at 16.]

In reply, Mr. Johnson does not directly address the Commissioner's argument, but argues that the Commissioner's brief raises several post hoc arguments. [Filing No. 21 at 1.]

"[A] hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). "It is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." *Id.* Although the hypothetical need not include every limitation if the expert had the opportunity to learn about the applicant's limitations through independent review of the medical records or questioning at the hearing, there must be "some

6

amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations." *Id.* "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Id.* at 1005. It is also well-established that "the ALJ should refer expressly to limitations in concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 620–21 (7th Cir. 2010).

The Court finds that the ALJ committed error when he failed to include Mr. Johnson's moderate limitations in concentration, persistence, or pace in his hypothetical to the VE. Medical consultant Dr. Lovko completed Mr. Johnson's mental RFC evaluation and indicated that Mr. Johnson was moderately limited in his concentration, persistence, or pace. [Filing No. 11-7 at 73.] In dictating the hypothetical to the VE, the ALJ stated in part:

> [Mr. Johnson] can understand, remember, and perform work tasks at GE reasoning level three as that term is defined in selected characteristics of occupations, and can perform productive work past or up to an average of 98 to 100 percent of an eight hour work day, not including a typical morning, lunch, and afternoon breaks.

[Filing No. 11-2 at 62.]

The ALJ thereafter modified his hypothetical a few times to include Mr. Johnson's physical limitations, such as his use of a cane and his limitations in climbing ramps, stairs, ladders, and other similar structures. [*See* Filing No. 11-2 at 62-65.] The ALJ's modifications of the hypothetical, however, did not incorporate any of Mr. Johnson's mental limitations. In his decision, the ALJ acknowledges that Mr. Johnson's "mental impairments interfere with his ability to [sustain] attention and concentration to the extent that they hinder him from the timely

7

completion of tasks commonly found in [a] work setting, but do not do so in a marked manner." [Filing No. 11-2 at 24.] However, even if the ALJ believes his limitations are not as severe, Seventh Circuit precedent provides that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to consider every limitation directly in the hypothetical, which includes deficiencies in concentration, persistence, or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Thus, failure to incorporate such limitations prevents the VE from receiving a full picture of Mr. Johnson's limitations.

On remand, the ALJ must make sure to properly instruct the VE regarding all of Mr. Johnson's limitations, including his moderate limitations in concentration, persistence, or pace.

**B. Listing 1.04(C)**

Mr. Johnson argues that the ALJ failed to properly consider whether Mr. Johnson met Listing 1.04. He argues that the ALJ incorporated the language of Listing 1.04(A) through 1.04(C) in the decision, but provided no support for his conclusion that "'there is no opinion in the medical evidence that any of the impairments meets or medically equals a listing.'" [Filing No. 15 at 15] (citing Filing No. 11-2 at 22).] Mr. Johnson argues that the ALJ "has no trained medical knowledge or experience to justify making this finding without the assistance of a medical professional." [Filing No. 15 at 15.] He argues that the ALJ erred by not having a medical expert at the hearing to determine whether Mr. Johnson met or medically equaled a listing. [Filing No. 15 at 15; Filing No. 18-19.] He further claims that there is sufficient evidence in the record that could support a finding that he meets or at least equals the requirements of Listing 1.04(C) for his back impairment. [Filing No. 15 at 16.] Moreover, Mr. Johnson claims that when the ALJ receives additional medical evidence that could modify the state agency consultant's findings, the ALJ should obtain an updated medical opinion. [Filing No. 15 at 17-18.]

In response, the Commissioner argues that the ALJ evaluated Mr. Johnson's impairments and noted at the outset that no opinion in the medical evidence supported a finding that he met or equaled a listing. [Filing No. 20 at 5.] The Commissioner claims that "the ALJ stated in his decision [that Mr. Johnson] did not show he had the required Listing criteria for disorders of the spine," and that the ALJ made "objective medical findings throughout his decision" to show that his conclusions were reasonably supported by substantial objective medical findings. [Filing No. 20 at 6.] The Commissioner further argues that two state agency physicians reviewed the evidence and "indicated on the [Disability Determination Services] forms for the initial and reconsideration determinations that disorders of the back, discogenic and degenerative, were considered, but found not to meet or equal the criteria of any listings." [Filing No. 20 at 7.]

In reply, Mr. Johnson argues that "[m]erely quoting the listing is insufficient to satisfy the requirements of a thorough listing discussion." [Filing No. 21 at 2.] He further argues that the Commissioner cites to evidence that the ALJ did not consider under Step Three of the analysis. [Filing No. 21 at 2.]

 "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citations omitted). The listings specify the criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). A claimant may also satisfy a listing by showing that his impairment is accompanied by symptoms that are equal in severity to those described in the listing. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1526). A finding of medical equivalence requires an expert's opinion on the issue. *Minnick*, 775 F.3d at 935 (citations omitted).

9

Listing 1.04 describes spinal disorders, resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04). It also requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." *Id.*

The Court concludes that the ALJ failed to provide an adequate explanation to support his finding that Mr. Johnson does not meet or medically equal Listing 1.04. As Mr. Johnson points out, the ALJ solely states that Mr. Johnson does not meet or medically equal Listing 1.04(A) through (C) because "[t]here is no opinion in the medical evidence that any of the impairments meets or medically equals a listing." [Filing No. 11-2 at 22.] This is insufficient to support a denial. While the Court is not determining that Mr. Johnson meets a listing, it points out that the ALJ must cite to evidence from the record and provide more than a perfunctory analysis of the listing. Moreover, the Commissioner raises several arguments and cites to specific evidence to support why Mr. Johnson does not meet any of the criteria under Listing 1.04(A) through (C), but relies upon information that the ALJ did not discuss under this step of the analysis.

In a related argument, Mr. Johnson claims that the ALJ was "playing doctor" when he concluded that he does not meet a listing, and that the ALJ was required to have a medical expert at the hearing to help make that determination. Seventh Circuit precedent provides that "the procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*,

204 F.3d 780, 781 (7th Cir. 2000) (citations omitted). The Court notes that there is medical evidence on the record that demonstrates Mr. Johnson has a medical history of problems with his back and right leg. Given that the ALJ fails to discuss any of this evidence or provide a basis for his denial, the Court instructs the ALJ on remand to carefully review the record and, if he finds necessary, to summon a medical expert to the hearing to help make a determination regarding whether Mr. Johnson meets or medically equals a listing.[3]

### C. Mr. Johnson's Cane

Mr. Johnson argues that the ALJ failed to discuss his need of a cane to ambulate. [Filing No. 15 at 21.] He claims that the ALJ gave Dr. Kalinowski's opinion little weight because he prescribed the cane due to low back pain, but found no other evidence to indicate the cane was medically necessary. [Filing No. 15 at 21.] Mr. Johnson claims that the record contains objective evidence of difficulties with his right leg, which was evidence that was not considered by the ALJ. [Filing No. 15 at 21.]

In response, the Commissioner agrees that the ALJ gave little weight to Dr. Kalinowski's prescription of a cane because no evidence showed that the cane was medically necessary. [Filing No. 20 at 12.] The Commissioner claims that the ALJ reviewed the evidence and reasonably concluded that the cane was prescribed as a convenience. [Filing No. 20 at 12.] She further claims that even if Mr. Johnson needed the cane as an accommodation, the VE determined that there are 1,500 jobs in Indiana as an information clerk, which is an occupation that allows Mr. Johnson to use his cane. [Filing No. 20 at 12-13.]

Mr. Johnson does not reply to this argument.

---

[3] Per the Hearings, Appeals and Litigation Law Manual ("HALLEX"), an ALJ may obtain a medical expert when determining whether the claimant meets a listed impairment. HALLEX I-2-5-34, *available at* http://www.ssa.gov/OP_Home/hallex/hallex.html (last visited Mar. 1, 2016).

11

In explaining his decision, the ALJ need not discuss every piece of evidence in the record. *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). However, the ALJ must confront the evidence that does not support his conclusion and explain why it was rejected. *Id.*

The Court agrees with Mr. Johnson. Under the RFC analysis, the ALJ addressed Mr. Johnson's use of a cane. The ALJ stated that he gave little weight to Dr. Kalinowski's prescription of a cane because he claims he prescribed it solely as a convenience due to Mr. Johnson's back pain. The ALJ further indicated that nothing in the record showed "instability, falling, or other clinical observations that would lead to the conclusion that a cane [was] medically necessary." [Filing No. 11-2 at 30-31.] The Court disagrees. Prescription of a cane to alleviate pain is hardly a mere "convenience." Alleviation of pain is a frequent method of medical treatment. Based on the ALJ's analysis, the Court is unable to discern whether the ALJ considered the evidence that discusses Mr. Johnson's problems – including pain – with his right leg. In particular, medical records show that Mr. Johnson had weakness in the right leg, [Filing No. 11-7 at 5], "a weaker deep tendon reflex" with "reduced strength (4/5) in the right leg," [Filing No. 11-7 at 5], and an "EMG needle exam" that showed he had a "chronic right L4-5 radiculopathy," [Filing No. 11-8 at 3]. Thus, this is not harmless error. If Mr. Johnson requires the use of a cane to ambulate, such limitation must be accounted for in his RFC. Further, the VE determined that Mr. Johnson could perform only one of the three occupations recommended by the VE with the use of his cane. [*See* Filing No. 11-2 at 33.]

Accordingly, on remand, the ALJ should address all the evidence that is relevant to Mr. Johnson's use of a cane.

### D. Treating Physician

Mr. Johnson argues that the ALJ failed to give special deference to Dr. Kalinowski, Mr. Johnson's treating physician, as required by the Social Security regulations. [Filing No. 15 at 25.] He further claims that the ALJ did not explicitly articulate the factors under 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c) when he gave little weight to Dr. Kalinowski's opinion. [Filing No. 15 at 25-26.] Mr. Johnson argues that if the ALJ had a question regarding the records, the ALJ should have contacted Dr. Kalinowski for clarification. [Filing No. 15 at 26-28.]

In response, the Commissioner argues that the ALJ did consider various factors under the regulations in his assessment of Dr. Kalinowski's opinion, "including treating physician status, length of treatment, consistency with the record, and supportability." [Filing No. 20 at 14.] She claims that the ALJ stated that the medical evidence showed a limited number of treatment sessions with Dr. Kalinowski, which were inadequate to provide a longitudinal view of Mr. Johnson's impairments. [Filing No. 20 at 13.] She further argues the ALJ gave little weight to Dr. Kalinowski because he presented his conclusions in a "check box format" without further meaningful explanation. [Filing No. 20 at 13.]

In reply, Mr. Johnson argues that ironically the Commissioner and the ALJ take issue with Dr. Kalinowsli's opinion because it is in a "'summary check box format that had little or no meaningful rationale,'" and yet they rely on the state agency consultants' opinions that also contain "check box summaries" with little or no meaningful explanations. [Filing No. 21 at 3 (citing Filing No. 20 at 13).]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances.

13

*Minnick*, 775 F.3d at 937-38. Section 404.1527(c)(2) further provides "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply a number of factors to determine what weight to give the opinion, including: 1) the length of the treatment relationship and the frequency of the examination; 2) the nature and extent of the treatment relationship; 3) support by relevant evidence; 4) consistency with the record as a whole; 5) the physician's area of specialization; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6); 20 C.F.R. § 416.927(c)(2)-(6).

The Court finds that the ALJ committed error when he afforded little weight to Dr. Kalinowski's opinion. The ALJ explained that Mr. Johnson had "no more than three treatment sessions" with Dr. Kalinowski, which is "inadequate to provide a longitudinal view" of Mr. Johnson's impairments and limitations. [Filing No. 11-2 at 30.] The ALJ further articulated that the physician's conclusions were presented in a check the box manner with no rationale, and that although he considered clinical observations, objective testing, and symptoms, the physician did not indicate whether he relied on those findings for his conclusions. [Filing No. 11-2 at 30.] The ALJ's rationale is unsound. First, as Mr. Johnson points out, the ALJ gives Dr. Kalinowski's opinion little weight partly because his opinion is in a check the box format with no rationale, yet the ALJ gives "significant weight" to the state agency consultants' opinions, which are also presented in a check the box format with no rationale. [Filing No. 11-2 at 31.] Further, although the ALJ finds that Dr. Kalinowski did not have a longitudinal patient relationship with Mr.

Johnson, he would likely be more knowledgeable of Mr. Johnson's impairments.  The state agency consultants met with Mr. Johnson once, Dr. Kalinowski supervised Mr. Johnson's care for over a year.  Lastly, in deciding not to give Dr. Kalinowski's opinion controlling weight, the ALJ does not articulate that his opinion is not supported by or inconsistent with evidence from the record. "The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate [his] analysis so that [the Court] can follow [his] reasoning." *Minnick*, 775 F.3d at 938.

Given the ALJ's improper analysis, the ALJ must reevaluate whether Dr. Kalinowski's opinion is entitled to controlling weight.

## IV.
### Conclusion

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Williams benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).  The Court notes that on remand, the ALJ must incorporate Mr. Johnson's moderate limitations in concentration, persistence, or pace into his hypothetical to the VE.  If he deems necessary, the ALJ shall summon a medical expert to help determine if Mr. Johnson meets or medically equals a listing.  The ALJ must also address all the evidence regarding Mr. Johnson's use of a cane.  Lastly, the ALJ must reevaluate Dr. Kalinowski's opinion to determine if it is entitled to controlling weight.

Date: March 3, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov